## HUDGINS v. GAGE et al.

### No. 2084.

Court of Appeal of Louisiana. First Circuit.

March 4, 1940.

Rehearing Denied April 10, 1940.

Cline, Thompson, Lawes & Cavanaugh, of Lake Charles, for appellant.

McCoy & King, of Lake Charles, for appellee.

OTT, Judge.

The plaintiff in this suit seeks to recover damages in the total sum of $56,020 for personal injuries which she claims to have received in an automobile collision between twelve and one o'clock on the morning of August 19, 1938, on U. S. Highway No. 75 between Galveston and Houston, Texas. The plaintiff is a trained nurse, twenty-nine years of age, and resides in Houston, Texas. The defendants in the suit are Kenneth K. Gage, his employer, the Lane Wells Company, and the Travelers Insurance Company alleged to be the insurance carrier on the car driven by Gage.

Another suit was filed by Miss Lillian Frances Dance, also a resident of Houston, Texas, against the same defendants for damages in the total sum of $65,000 for personal injuries which she claims to have received in the same collision. Both of these young ladies outline their respective injuries and damage in separate petitions.

As the question of liability in each case involves the same alleged acts of negligence, the cases were consolidated for the purpose of trial but separate judgments were entered in each case, dismissing the suit. Separate appeals were taken and perfected by each plaintiff, but the two cases were argued and briefed together in this court. As the question of liability in each case depends on the same state of facts, we will consider the cases together but render separate decrees.

The issues in the cases will appear from a brief statement of what we consider the vital and practically undisputed facts as these facts appear from the pleadings and the evidence.

Plaintiffs were guest passengers in a 1936 Ford V 8 owned and being driven by one George Elting. Miss Hudgins was sitting on the front seat to the right of Elting and Miss Dance was sitting on the rear seat on the left side. Elting was driving in a northerly direction from Galveston to Houston, and when he reached a crossroad in or near the village of Webster, he slowed down from a speed of about 50 miles per hour to a speed of 30 to 35 miles per hour. Gage had been following the Elting car for some two miles and when he reached this crossroad in or near Webster, he slowed down his speed to about the same speed of Elting. Both cars traveled at about the same speed for some quarter of a mile, the Gage car following the Elting car with a distance of 100 to 150 feet between them according to Gage and one other witness, or with a distance of 60 to 70 feet between them according to Elting's estimate. Both Gage and Elting were driving on their right or the east side of the paved highway. The road at this point is straight and the night was clear.

Coming from the north or opposite direction was a truck being driven by a colored man named Deman with a small colored girl sitting beside him and a young hitch-hiker riding in the back of the truck. This truck (which we will refer to as the Deman truck) was on its extreme right or the west side of the road and was preparing to stop at a place on the west side of the road called Polk's Place. This truck was going at a very slow rate of speed. Another truck driven by one Bingham (which we will refer to as the ice truck) was following the Deman slow moving truck and was being driven at a very fast speed. In this ice truck there were seven or eight negroes.

To get some idea of what happened, we can picture in our minds these two cars, the Elting car in which plaintiffs were riding followed by Gage in the rear at a distance anywhere from 60 to 150 feet and both cars going from 30 to 35 miles per hour on their side of the road, and the two trucks coming from the opposite direction, the Deman truck going very slowly on its side of the road and the ice truck rapidly approaching from the rear. Just before the ice truck caught up with the Deman truck, and about the time the Elting car was almost opposite the Deman truck, the ice truck suddenly swerved to its left in an attempt to pass the Deman truck ahead of it and struck the left front part of the Elting car a terrific blow, almost demolishing the entire left front side of the car. The ice truck continued on and struck and side-swiped the Gage car on the left and then turned almost completely around facing back north beside the Gage car. Three of the negroes in this ice truck were killed instantly, one of them being catapulted into the air, striking the hood and windshield of the Gage car and then bouncing off on the shoulder of the road a few feet away. The Deman truck was thrown down the road and turned over, killing the little colored girl beside the driver in that truck.

Before discussing the alleged acts of negligence on the part of Gage by which the plaintiffs in the two suits hope to pin liability on Gage and his employer, it is well to state that there is no proof that the defendant insurance company carried liability insurance on the Gage car, so this company might be dismissed from the suit for that reason. It is also well to state that no negligence is charged to Elting, nor is there any contributory negligence charged to either plaintiff. While the owner of the ice truck is not a party to this suit, it is charged by plaintiffs that the negligence of the driver of the ice truck and the negligence of Gage combined to cause the accident and the latter is sought to be held as a joint-tortfeasor with the driver of the ice truck. On the other hand, the defendants not only deny any negligence on the part of Gage, but they allege that the sole and proximate cause of the accident was the gross—if not criminal—negligence on the part of the driver of the ice truck.

It is the contention of plaintiffs that simultaneously with the striking of the front part of the Elting car by the ice truck

this car was struck suddenly and violently from the rear by the Gage car, and that their injuries resulted from the terrific jar and jolt caused them when the car in which they were riding was thus struck from the front and from the rear about the same time. The negligence charged to Gage consisted in his failure to keep a proper lookout, in driving too close to the car ahead of him, in driving too fast and in his failure to have his car under proper control considering the existing circumstances and the traffic conditions.

The two young ladies did not remember much about the accident, as they were thrown against parts of the car in which they were riding and rendered unconscious by the jar of the impact. One of the ladies said there was but one jolt. Elting, who was driving the car in which plaintiffs were riding, stated that he did not know that the ice truck was going to swerve out of its path and strike his car until the crash came; that at that time Gage was 60 to 70 feet behind his car. Elting was stunned but not seriously injured by the impact.

Gage testified that he was driving 100 to 150 feet behind the Elting car and just as soon as he saw that the ice truck was going to strike the Elting car, he applied his brakes, turned to his right and came to a stop back of the Elting car. He denies that his car ran into this forward car but claims that the forward car was knocked back into his car by the impact of the ice truck. The young hitch-hiker in the Deman truck testified that the ice truck was approaching from behind the truck in which he was riding at a high speed; that the Elting car and the Gage car were coming from the opposite direction about 100 to 150 feet apart; that the ice truck hit the left rear portion of the truck in which he was riding in attempting to pass and about the same time hit the oncoming (Elting) car; that the truck in which he was riding was turned over in the driveway at Polk's Place, and the ice truck stopped almost opposite the Gage car across the highway.

We think the record fully justifies the findings of the trial judge with respect to certain material facts, and as he gives his findings of these facts in a part of his reasons for judgment from which we quote as follows:

"The physical facts after the accident showed that there was an open space sufficient for a person to walk between the rear end of the car occupied by the plaintiffs and the front end of the Gage car; that the hood, top of radiator and windshield of the Gage car was spattered with blood and brains and hair; that the left head light of the Gage car was gone and the top of the radiator and hood was crushed or mashed in and that the left front fender was bent and crushed and that the rear left fender was dented and a few scratches were on the left door and left side of the body. There was no damage to speak of on the lower part of the radiator nor to the front bumper.

"The photographs of the car occupied by the plaintiffs show that it received a terrific impact on the front and left front, but practically no damage whatever to the rear end of that car; there is, however, apparently a small dent near the center of the rear bumper, and the right rear fender shows some small damage.

"The evidence further shows that the ice truck was painted red and that after the wreck streaks of red paint were found on the left fenders and left side of the body of the car occupied by the plaintiffs and also on the left fenders of the Gage car, showing that the red ice truck had crashed along the left side of both cars before coming to a stop in the center of the highway about the rear end of the Gage car, and lying diagonally across the highway."

From the testimony given by both sides and the physical facts shown by the record, we are convinced that the Gage car did not strike the car in which plaintiffs were riding at the same time that the ice truck struck this car from the front. It is obvious that this could not have occurred as plaintiffs contend, as the evidence shows that Gage was 60 to 150 feet behind this car when it collided with the ice truck. If the Gage car did strike the Elting car from the rear, it was after the collision with the ice truck and the Elting car had been stopped or knocked back by the force of the impact. We are convinced, as was the trial judge, that the impact with the ice truck was the principal, if not the sole, cause of the jar and jolt which produced the injuries to plaintiffs. We are further convinced that if the Gage car did strike the forward car, the impact was so slight as not to be a contributing factor in causing the injuries complained of. Moreover, the evidence does not show any negligence on the part of Gage.

It can hardly be said that Gage was driving too fast. He was going about the same speed as the car in front of him. He was keeping a proper lookout and saw the lights of both trucks a half mile or so, but these trucks were on their side of the road, and his car and the car ahead of him were on their right side of the road. There was nothing to indicate to him that the ice truck was going to dash over in front of the Elting car. Gage saw the impending collision as soon as he could have been reasonably expected to see it, and saw it even sooner than the driver of the car ahead of him realized the danger. Gage applied his brakes just as soon as he saw the impending crash.

Rule 8 of Section 3 of Act No. 286 of 1938 is expressive of the general rule relative to the distance at which one car may follow another car going in the same direction. The rule provides that "the driver of a motor vehicle shall not follow another vehicle more closely than is reasonable and prudent, having due regard to the speed of such vehicle and the traffic upon and condition of the highway." The second paragraph of the rule prohibits a motor truck from following another motor truck within 100 feet outside of a business or residential district.

In the case of Boudreaux v. Iseringhausen, 177 So. 412, we held that it was negligence to drive within 25 or 30 feet of a forward car going at the rate of 35 miles per hour and where another car was coming in the opposite direction. And we also held in Session v. Kinchen et al., 178 So. 635, that it is negligence to follow a car at a distance of 25 or 30 feet going at a speed of 35 to 40 miles per hour. But in the present case, even according to the testimony of Elting, Gage was 60 to 70 feet behind the forward car and going 30 to 35 miles per hour with no traffic conditions to indicate any unusual danger. There was nothing to indicate to the driver of the following car that the ice truck would suddenly swerve into the pathway of the forward car. See Hill v. Knight et al., La.App., 163 So. 727; Allen v. Campbell, 17 La.App. 139, 134 So. 717, and Stevenson v. Campbell, 17 La.App. 142, 134 So. 718.

Finding no error in the judgment and for the reasons herein assigned, it is ordered that the judgment in the case of Mary Hudgins v. Kenneth K. Gage et al. be and the same is hereby affirmed at the cost of appellant.